IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TINA JIMERSON**                                                                                                  **PLAINTIFF**

**JERELL THOMPSON, as
SPECIAL ADMINISTRATOR
of the estate of JOHN BROWN**                                              **CONSOLIDATED PLAINTIFF**

v.                                            Case No. **4:20-cv-01145 KGB**

**DONNY FORD, former Sheriff of
Dallas County, Arkansas,** *et al.*                                                            **DEFENDANTS**

**DONNY FORD, former Sheriff of
Dallas County, Arkansas,** *et al.*                                     **CONSOLIDATED DEFENDANTS**

## ORDER

Before the Court are defendants City of Fordyce, Ronnie Poole, the Estate of Larry Case, and the Estate of John Kellam's ("Fordyce Defendants") motion to compel Rule 35 examination of plaintiff and for additional time to produce expert report (Dkt. No. 145); Donny Ford, individually and officially, and the Estate of William Setterman's motion to extend time to file dispositive motion (Dkt. No. 146); plaintiff Jerrell Thompson, as Special Administrator of the Estate of John Brown, and Tina Jimerson's motion to amend scheduling Order (Dkt. No. 147), and Donny Ford, individually and officially, and the Estate of William Setterman's motion for leave to supplement motion to extend time to file dispositive motion (Dkt. No. 153).

On May 2, 2024, the Court held a telephonic hearing during which the parties discussed these pending matters (Dkt. No. 171). Based on the May 2, 2024, hearing and the Court's Order suspending all pretrial deadlines (Dkt. No. 154), the Court denies as moot: (1) the portion of motion to compel Rule 35 examination of plaintiff and for additional time to produce expert report that requests additional time to produce an expert report (Dkt. No. 145); (2) the motion to extend

time to file dispositive motion (Dkt. No. 146); (3) the motion to amend scheduling order (Dkt. No. 147); and (4) the motion for leave to supplement motion to extend time to file dispositive motion (Dkt. No. 153).

The remaining matter before the Court is Fordyce Defendants' motion to compel Rule 35 examination of plaintiff (Dkt. No. 145). For the following reasons, the Court grants the motion (*Id.*).

## I.  Background

Fordyce Defendants seek to compel plaintiff Tina Jimerson to submit to a psychological exam with Dr. Kristen Klipfel under Federal Rule of Civil Procedure 35 (*Id.*, at 1). Ms. Jimerson "does not dispute that [d]efendants are entitled to conduct an examination pursuant to [Federal Rule of Civil Procedure] 35 to probe [Ms. Jimerson]'s damages claims related to her [post-traumatic stress disorder ("PTSD")] diagnosis and ongoing experience of mental and emotional distress" (Dkt. No. 150, at 1). The Court notes that, while Ms. Jimerson's response to the motion to compel claims that Ms. Jimerson has been diagnosed with PTSD, the second amended complaint alleges broad damages of mental suffering without naming any particular diagnosis (Dkt. No. 83, ¶¶ 84–85).

Ms. Jimerson and Fordyce Defendants ultimately agree that an examination is appropriate, but the parties have failed to agree on all of the conditions and constraints (Dkt. No. 150, at 1–2). Fordyce Defendants represent that Ms. Jimerson requested six stipulations for the Rule 35 examination and that Fordyce Defendants agreed to four of them:

> [T]hat Dr. Klipfel will not be allowed to ask questions related to liability of the defendants or related to allegations in the complaint that do nor [*sic*] concern damages, that testing will be strictly psychological in nature, that only Ms. Jimerson and Dr. Klipfel will be present for the examination, and that an audio recording of the testing will be made and provided to all counsel but not used in litigation.

(Dkt. No. 145, at 2–3). Fordyce Defendants did not stipulate to Ms. Jimerson's requests that the exam be limited to six hours instead of eight and that Ms. Jimerson receive a list of tests to be administered in advance of the examination (*Id.*, at 3). Fordyce Defendants now seek to compel the Rule 35 examination with all but these two stipulations (*Id.*).

Ms. Jimerson filed a timely response to Fordyce Defendants' motion to compel Rule 35 examination of plaintiff and for additional time to produce expert report (Dkt. No. 150). Ms. Jimerson states that she "offered to split the difference and agree to an examination lasting seven hours, but [d]efendants were unwilling to agree and insist on a full eight hours." (*Id.*, at 2). Ms. Jimerson also states that "[w]hile [she] was willing to compromise to avoid motion practice, her position has always been that six hours is a sufficient and appropriate duration for the Rule 35 examination, and that remains her position for purposes of this motion." (*Id.*, at 2 n.1).

Further, Ms. Jimerson clarifies that she seeks "a more narrowly-tailored list of potential tests that is reasonably targeted towards the actual mental health damages issues in this case" than the list of over 70 possible tests that have already been provided by Fordyce Defendants (*Id.* at 2). Fordyce Defendants provided a letter written by Dr. Klipfel that states she can provide only a general list of possible tests because, in her words:

> [P]sychologists have an array of testing materials from which they may choose, and the decision as to which are ultimately administered is a dynamic process, not decided prior to an examination. While an examinee's particular history may be helpful in considering relevant tests to administer, ultimate decisions regarding the administration of any one test are based upon the presentation of the examinee at the time of the examination. Related, we do not wish to find ourselves limited to employing specific tests. We simply do not conduct our practice in such a manner (nor do any of our psychologist colleagues with similar training); a prior designation of tests falls far from the mark of good practice and can limit our capacity to address the psycholegal inquiries being posed.

(Dkt. No. 145-4, at 2). Along with this letter, Dr. Klipfel listed over 70 possible tests that may be administered on Ms. Jimerson (*Id.*, at 3–4).

3

## II. Legal Standard

Federal Rule of Civil Procedure 35 provides that a court "may order a party whose mental . . . condition . . . is in controversy to submit to a . . . mental examination by a suitably licensed or certified examiner." Fed R. Civ. P. 35(a)(1). The order "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed R. Civ. P. 35(a)(2)(A). Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). However, "there are situations where the pleadings alone are sufficient to meet these requirements." *Id.* at 119. This includes those situations when a plaintiff "asserts mental or physical injury, . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* (citations omitted).

Mental examinations must be limited to the extent that a party's mental condition is actually in controversy. *See id.* at 120–21 (holding that allegation that party was mentally or physically incapable of driving a bus did not justify "wide-ranging psychiatric or neurological examinations" or a "broad internal medicine examination"). Additionally, a court order granting an examination under Rule 35 "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

District Courts have considerable discretion in discovery rulings related to Rule 35. *See Porchia v. Design Equip. Co., a Div. Of Griffith Lab'ys*, 113 F.3d 877, 882 (8th Cir. 1997). The "in controversy" and "good cause" requirements under Rule 35 do not mandate that a court impose

4

an explicit limitation on the length of a mental evaluation.  *See Robinson v. De Niro*, 600 F. Supp. 3d 286, 291–92 (S.D.N.Y. 2022); *Simpson v. University of Colorado*, 220 F.R.D. 354, 364 (D. Colo.); *Fiello v. Daimler Trucks N. Am. LLC*, No. 1:20-CV-182, 2021 WL 1381131, at *6 (M.D.N.C. Apr. 12, 2021); *Gade v. State Farm Mut. Auto. Ins. Co.*, No. 5:14-CV-00048-CR, 2015 WL 12964613, at *6 (D. Vt. Jan. 2, 2015).

Nevertheless, courts may place explicit limitations on the length of a Rule 35 evaluation when there is good cause for such limitations.  *See Letcher v. Rapid City Reg'l Hosp., Inc.*, No. CIV.09-5008-JLV, 2010 WL 1930113, at *4–5 (D.S.D. May 12, 2010) (limiting the interview portion of an independent medical examination to five hours with a 10-minute break every two hours and a lunch break when the plaintiff submitted an affidavit from her treating psychologist in which the psychologist claimed a three-hour interview was "beyond [the plaintiff's] tolerance"); *Krasney v. Nationwide Mut. Ins. Co.*, No. 3:06-CV-1164 (JBA), 2007 WL 9754485, at *3 (D. Conn. Dec. 11, 2007) (stating that Rule 35 examination of "eight hours, as opposed to the six hours plaintiff requests, is appropriate particularly when plaintiff has failed to show 'good cause' for restricting the proposed examination time").  Thus, when imposing a restriction on a Rule 35 examination, the Court will exercise its discretion to balance the good cause to conduct the Rule 35 examination against the good cause for the restriction.

The length of a Rule 35 examination should be tailored to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case . . . .").  In some instances, a Rule 35 exam may last eight hours or more.  *See* Fed. R. Civ. P. 26(b)(1); *Stillman v. Wal Mart Stores E. I, LP*, No. 4:19-CV-00222-DGK, 2019 WL 11851712, at *2 (W.D. Mo. Dec. 3, 2019) (limiting an examination to two days consisting of one eight-hour day and one

5

four-and-a-half-hour day, both including breaks and a one-hour lunch break, when this amount of time was "not unreasonable, considering the injuries and damages alleged in the case"); *Krasney*, 2007 WL 9754485, at *3.

### III.     Discussion

#### A.     Examination Length

Ms. Jimerson asserts that six hours should be sufficient for the Rule 35 examination (Dkt. No. 150, at 2, 3, 8–9). Ms. Jimerson states that "there is nothing in Dr. Klipfel's letter which suggests that six hours would be insufficient." (*Id.*, at 8; *see also* Dkt. No. 145-4). The Court notes that Ms. Jimerson was willing to extend the amount of time for the examination to seven hours during her negotiations with Fordyce Defendants, but she has now reverted to her original request for a maximum examination time of six hours (*Id.*, at 2 n.1; Dkt. No. 145-3, at 2–3). The Court also notes that Ms. Jimerson's counsel declined to have Ms. Jimerson fill out a questionnaire in advance, which counsel for Fordyce Defendants believes could have saved some examination time (Dkt. No. 145-3, at 2).

Fordyce Defendants request an eight-hour examination, representing that: (1) "[t]his amount of time is consistent with the eight hours Dr. Klipfel was allocated to evaluate the plaintiff, Anthony Jakes, in separate litigation involving the law firm of this Plaintiff's counsel in *Jakes v. Boudreau*, 1:19-cv-02204, (N.D. Ill. 2019);" and (2) other case law supports their request for eight hours or an unlimited length of time (Dkt. No. 145, at 2, 4–5).

Ms. Jimerson alleges that her "emotional pain and suffering stemming from the loss of [her years of incarceration] is, has been, and will continue to be substantial." (Dkt. No. 83, ¶ 84). Ms. Jimerson further alleges that she "has suffered tremendous damage, including but not limited to . . . mental suffering . . . all proximately caused by [d]efendants' misconduct." (*Id.*, ¶ 85). This

6

places in controversy Ms. Jimerson's mental suffering, and there is good cause for Dr. Klipfel to conduct an examination.

Ms. Jimerson has not shown good cause for a six-hour time limitation on the examination, but rather, has relied on Fordyce Defendants' failure to demonstrate that eight hours will be necessary (Dkt. No. 150, at 8–10).  While Fordyce Defendants have the burden to demonstrate that the issues for examination are in controversy and that there is good cause, the Fordyce Defendants are not required to predict the exact length of time it will take to conduct the examination.  *See Schlagenhauf*, 379 U.S. at 118–19; *Robinson*, 600 F. Supp. at 291–92.  The Court grants Fordyce Defendants' request for a limitation on the Rule 35 examination at eight hours (Dkt. No. 145).  The Court reminds the parties that an eight-hour time limit imposed by the Court is a maximum.  If the evaluation of mental conditions in controversy and for which there is good cause is completed before the eight-hour time limit expires, the examination must conclude.  *See Schlagenhauf*, 379 U.S. at 118 (requiring that "each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination").

        **B.**    **List Of Tests**

Ms. Jimerson objects to some of the tests provided by Fordyce Defendants, including tests of Ms. Jimerson's "intelligence and executive functioning, her memory, and her grip strength." (Dkt. No. 150, at 3 (citing Dkt. No. 145-4)).  Ms. Jimerson requests that Fordyce Defendants produce a more tailored list of tests that may be provided during her psychological examination, and she requests that tests are limited to those that examine her "PTSD diagnosis, and her ongoing experience of mental and emotional harms related to her nearly three decades of wrongful incarceration." (*Id.* , at 4–5).

7

The law clearly requires that a party seeking a Rule 35 examination demonstrate good cause. *See Schlagenhauf*, 379 U.S. at 118. However, it is not clear whether the law requires that the party seeking an examination provide a list of all possible tests in advance of an examination. *See generally Davis v. Rumsey Hall Sch., Inc.*, No. 3:20-CV-01822(SALM), 2022 WL 2802334, at *5 n.6 (D. Conn. July 18, 2022). The Court finds that the list provided by Dr. Klipfel was sufficient to provide to Ms. Jimerson an opportunity to object that the proposed examination would not adequately cover matters that are in controversy or for which good cause exists. Given Dr. Klipfel's letter stating that issuing a precise list of possible tests is impractical for this sort of exam and that all tests named are psychological and neurocognitive (Dkt. No. 145-4, at 2), the Court denies Ms. Jimerson's request for an updated list of possible tests (Dkt. No. 150, at 4–8).

## IV.  Conclusion

For good cause shown, the Court grants Fordyce Defendants' motion to compel Rule 35 examination of plaintiff and for additional time to produce expert report (Dkt. No. 145). The Rule 35 examination of Ms. Jimerson is limited at a maximum of eight hours. In keeping with the requirements of Rule 35, the Court issues the following parameters for Ms. Jimerson's psychological examination:

1. Time: The examination shall last no more than eight hours at a time chosen by agreement between Ms. Jimerson and Fordyce Defendants.

2. Place: The examination will take place virtually, per the parties' previous agreement (Dkt. Nos. 145-3, at 2; 150, at 7).

3. Conditions: Only Ms. Jimerson and Dr. Klipfel will be present for the examination, and an audio recording of the testing will be made and provided to all counsel but not used in litigation, per the parties' previous stipulations (Dkt. No. 145, at 2–3).

4. Scope of the examination: Dr. Klipfel will not be allowed to ask questions related to liability of the defendants or related to allegations in the complaint that do not concern damages. Testing will be strictly psychological in nature, and the discussion will be limited to Ms. Jimerson's mental suffering as outlined in the second amended civil rights complaint (Dkt. Nos. 145, at 2; 83, ¶¶ 83–85).

5. Person performing the examination: Dr. Kristen M. Klipfel, Ph.D.

It is so ordered this the 6th day of September, 2024.

*Kristine G. Baker*
Kristine G. Baker
Chief United States District Judge