## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**TINA JIMERSON**                                                                                          **PLAINTIFF**

**JERELL THOMPSON, as**
**SPECIAL ADMINISTRATOR**
**of the estate of JOHN BROWN**                                    **CONSOLIDATED PLAINTIFF**

**v.**                                        **Case No. 4:20-cv-01145 KGB**

**DONNY FORD, former Sheriff of**
**Dallas County, Arkansas,** *et al.*                                             **DEFENDANTS**

**DONNY FORD, former Sheriff of**
**Dallas County, Arkansas,** *et al.*                       **CONSOLIDATED DEFENDANTS**

## <u>ORDER</u>

Before the Court is the motion to exclude testimony of defendants' expert Joseph Gamble filed by plaintiffs Tina Jimerson and Jerell Thompson, administrator of the Estate of John Brown (collectively "Plaintiffs") (Dkt. No. 182). Defendants did not respond to the motion. It does not appear to the Court that Plaintiffs deposed Gamble. Instead, Plaintiffs base their motion on Gamble's disclosed report, which is attached to the motion (Dkt. No. 182-1). For the following reasons, the Court grants, in part, and denies, in part, the motion (Dkt. No. 182).

### I.      Summary Of Arguments

Plaintiffs argue that the anticipated testimony of proposed defense expert Gamble, who is anticipated to testify that: (1) the Arkansas State Police ("ASP") led the Holmes homicide investigation and (2) "there is no evidence the Fordyce Police Department investigators violated Plaintiffs' rights," should be excluded. Addressing Gamble's report in reverse order, Plaintiffs first argue that Gamble's anticipated testimony asserts multiple inadmissible legal conclusions and passes judgment on the truthfulness and credibility of other witnesses and predicate facts. Second,

Plaintiffs argue that Gamble's opinion that the Arkansas State Police led the investigation is irrelevant and, therefore, inadmissible. Defendants did not respond to Plaintiffs' motion.

## II.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See* Fed. R. Evid. 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has directed that trial courts exercise a "gatekeeping" function under Rule 702 to ensure expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). If testimony is not relevant or if it is not reliable, then it must be excluded.

To determine if an expert's anticipated testimony is relevant, the Court must evaluate whether the expert's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). And an expert's opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, when a purported expert's testimony to an ultimate issue presents "evidence that merely tells the jury what result to reach"

that testimony "is not sufficiently helpful to the trier of fact to be admissible." *Kostelecky v. NL Acme Tool/NL Indus., Inc.,* 837 F.2d 828, 830 (8th Cir. 1988).  Thus, while an expert may testify about an ultimate issue, they may not testify as to legal conclusions. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *see* Fed. R. Evid. 704 (notes of advisory committee on proposed rule) (explaining Rule 704 was designed to "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach.").

Expert testimony in the context of police misconduct and 42 U.S.C. § 1983 litigation frequently crosses the line from admissible testimony on an ultimate issue to inadmissible legal conclusions.  For example, the Eighth Circuit determined that an expert's testimony on the reasonableness of police behavior considering Fourth Amendment standards was a statement of legal conclusion and inadmissible. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (citing *Peterson*, 60 F.3d at 475).  On the other hand, courts frequently admit expert testimony from police practices witnesses who opine on topics like generally accepted policing standards rather than on the lawfulness of those practices. *See, e.g.*, *Holmes v. Slay*, 895 F.3d 993, 1000–01 (8th Cir. 2018); *El-Ghazzawy v. Berhiaume*, 636 F.3d 452, 460 (8th Cir. 2011).

Expert testimony also is inadmissible when it attempts to control the functions and responsibilities of the jury.  For example, when an expert opines on issues of predicate facts, that testimony is inadmissible. *Peterson*, 60 F.3d 469, 475.  Similarly, the "evaluation of eyewitness testimony is for the jury alone.  'It is the exclusive province of the jury to determine the believability of a witness . . . .  An expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story.'" *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) (quoting *Bachman v. Leapley*, 953 F.2d 440, 441 (8th Cir. 1992)).

### III.    Analysis

As a preliminary matter, the Court finds that defendants' expert Gamble is sufficiently qualified "by knowledge, skill, experience, training, or education" such that he can testify about standard police practices and compliance with those standard practices.  Fed. R. Evid. 702.  However, that a witness is qualified as an expert does not make their testimony admissible.  *See Daubert*, 509 U.S. at 597.  The Court address the admissibility of Gamble's testimony in turn.

### A.    Inadmissible Legal Conclusions And Comments On Witness Truthfulness

Plaintiffs argue that Gamble's testimony contains impermissible legal conclusions (Dkt. No. 182).  The Court has examined Gamble's opinions and finds that sub-parts of the opinions are inadmissible because they present legal conclusions, improperly instruct the jury as to legal conclusions, or invade the province of the jury to evaluate the truthfulness and believability of witnesses.  However, other portions of Gamble's testimony are admissible as they speak to generally accepted police practices and whether, in Gamble's opinion, those practices were followed.  The Court finds that given the mixed admissibility of Gamble's anticipated testimony, the motion should be granted, in part, and denied, in part.

### 1.    Inadmissible Testimony

The Court finds that Gamble's proffered testimony makes legal conclusions and oversteps the role of an expert witness.  Those portions of the Gamble's testimony are inadmissible, and the Court excludes them.

First, any of Gamble's anticipated testimony that speaks to the lawfulness of any of the defendants' conduct is excluded.  It is the Court's role to determine the law and instruct the jury

to it. *City of Bella Villa*, 557 F.3d at 570 (8th Cir. 2009).  The Court excludes portions of Gamble's

anticipated testimony including, but not limited to, the following:

- "In the ASP led investigation, there is no evidence the Fordyce Police Department investigators violated Plaintiffs' rights."  (Dkt. No. 182-1 at 14).

- "However, I see no evidence that Case could have violated Ms. Jimerson's rights while employed by the City of Fordyce."  (Dkt. No. 182-1 at 15).

- "I find . . . that the FPD officers did not commit any constitutional violations."  (Dkt. No. 182-1 at 17).

    Similarly, Gamble's anticipated testimony regarding "responsibility" is inadmissible

because it crosses the line from police practices to legal obligations and legal responsibilities (Dkt.

No. 182-1 at 16).  Gamble's anticipated testimony, as presented in his report, does not sufficiently

delineate between legal responsibilities and traditional practices.  Gamble's testimony could refer

to whether traditional police practices indicate that an individual would traditionally have similar

responsibilities in a police department setting, but it equally could be that it is Gamble's testimony

that certain individuals were or were not responsible for conduct or omissions.  Testimony as to

the latter is inadmissible.  Accordingly, the Court excludes the following:

- "The fact that Poole transported Prescott does not make him responsible for the recording that Ford later procured after the transport."  (Dkt. No. 182-1 at 16).

- "It was Ford's responsibility to maintain the tape until it was turned over to prosecutors or ASP."  (Dkt. No. 182-1 at 16).

- "As there is no evidence that Poole ever was a custodian of the tape or was in any way responsible for is destruction, [Ford] had no responsibility to disclose to prosecutors that the tape was destroyed."  (Dkt. No. 182-1 at 16).

- "It would be Ford's responsibility to report details . . . Poole has no responsibility to take possession of the tape . . . any interaction concerning Prescott should have been documented by Ford."  (Dkt. No. 182-1 at 17).

Second, the Court finds that Gamble's report and anticipated testimony weighs the evidence and makes determinations about the existence of predicate facts essential to the litigation. The determination of these facts falls squarely within the responsibility of the jury. The Court finds that Gamble's evaluations about what information different individuals knew based upon his review of the record is an overstep into the jury's role. Likewise, the Court finds that Gamble's anticipated testimony referring to the existence of evidence as to different predicate facts generally oversteps. Thus, the Court excludes the following elements of Gamble's anticipated testimony:

- "For the reasons discussed in greater detail below, the fact that Poole transported Ronnie Prescott should not lead to the conclusion that he improperly withheld any evidence related to Prescott from the prosecutor's office." (Dkt. No. 182-1 at 14).

- "There is no evidence that Kellam participated in, or was aware of, any misconduct during the Holmes homicide investigation." (Dkt. No. 182-1 at 15).

- "There is no evidence that FPD and the Dallas County Sheriff's Department worked together to advance any goals in the Holmes investigation." (Dkt. No. 182-1 at 16).

- "As there is no evidence that Poole was aware of the tape's destruction…" (Dkt. No. 182-1 at 16).

- "I see no evidence from the record that FPD officers ever withheld any evidence from them." (Dkt. No. 182-1 at 17)

- "I also see no evidence in the record that FPD officers fabricated evidence against Tina Jimerson or John Brown." (Dkt. No. 182-1 at 17).

### 2.     Admissible Testimony

The Court finds that those portions of Gamble's opinion testimony regarding police practices not directly identified above or incorporated by reference for exclusion are admissible as a general matter. This includes Gamble's anticipated testimony about the police practice of cellmates and undercover agents and statements of opinion regarding consistency of practices with

Gamble's experience.  The Court will rule on contemporaneous objections to Gamble's anticipated testimony at trial, if Plaintiffs determine that his testimony veers into territory barred by this Order.

### B.    Relevance Of Gamble's Opinions

Plaintiffs also argue that Gamble's opinion regarding the lead organization in the Holmes investigation is irrelevant or otherwise discernable by a layperson through common sense (Dkt. No. 182).  Defendants did not respond to Plaintiffs' motion or provide explanation of the relevance of Gamble's opinion on this matter.

Without the benefit of full briefing, the Court tends to agree with Plaintiffs' assertion.  It appears that the jury can assess each § 1983 claim as to each defendant without expert testimony regarding which agency was "lead."  Moreover, it does not appear that the status of ASP as the lead agency is determinative under the state law civil conspiracy claims.  Thus, without any further explanation of why the organization's leadership status is relevant to the finder of fact, the Court will grant Plaintiffs' motion as to this portion of Gamble's opinion.

At pre-trial conference, Defendants may seek to admit Gamble's testimony as to ASP's "lead role" in the investigation upon a showing of relevance to the § 1983 or state law claims.

### IV.    Conclusion

For the foregoing reasons, at this time and on the record before it, the Court grants, in part, and denies, in part, Plaintiffs' motion to exclude the expert testimony of defendants' expert Gamble.  Gamble may testify at trial consistent with the terms of this Order.  As to those matters about which the Court grants an *in limine* motion, all parties, their counsel, and witnesses are directed to refrain from making any mention through interrogation, *voir dire* examination, opening statement, arguments, or otherwise, either directly or indirectly, concerning the matters about which the Court grants an *in limine* motion, without first approaching the bench and obtaining a

ruling from the Court outside the presence of all prospective jurors and the jurors ultimately selected to try this case. Further, all counsel are required to communicate this Court's rulings to their clients and witnesses who may be called to testify in this matter. The parties may revisit these issues at the pretrial conference to be conducted in this matter.

It is so ordered this 25th day of September, 2025.

Kristine G. Baker
Chief United States District Judge